788 P.2d 932

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Donald ARAGON, Defendant–Appellant.**

**No. 10989.**

Court of Appeals of New Mexico.

Jan. 2, 1990.

Certiorari Denied March 5, 1990.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Peter Rames, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals his convictions after a bench trial on eleven counts of burglary, one count of receiving stolen property, and one count of a felon in possession of a firearm. He also appeals the enhancement of his sentence under the Habitual Offender Act, NMSA 1978, Sections 31–18–17 to –20 (Repl.Pamp.1987) and the amendment of his judgment and sentence to require that he pay restitution. Defendant has moved to amend the docketing statement to add new issues, a motion we now deny. Since the application of law to the facts concerning many issues is clear, only part of this opinion warrants publication. The remainder of the opinion, which is incorporated by reference, will be a memorandum opinion and may not be cited as precedent. We discuss (1) issues abandoned, (2) admission of taped conversation, (3) sufficiency of the evidence, and (4) amendment of sentence in the portion of the opinion that will be published. We discuss (5) the motion to amend and (6) issues answered summarily in the portion of the opinion that is not to be published. We affirm defendant's convictions on all counts, but we reverse the amendment of the sentence and remand for further proceedings.

## ISSUES ABANDONED

Defendant's docketing statement attacked the trial court's failure to grant defendant's motion for appellate bond. This issue was not briefed. In addition, at trial and in the docketing statement, defendant argued that there was no probable cause to issue the first search warrant executed by the police. The basis for that claim was defendant's assertion that the affidavit in support of the search warrant provided no information connecting defendant to most, if not all, of the burglaries discussed in the affidavit. Defendant's briefs did not address this issue. Instead, in his briefs defendant attacked the search warrant only on the ground that the affidavit contained a false statement of fact. Therefore, this issue and the appellate bond issue have been abandoned. *See*

*State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App.1985).

Defendant appears to have made an effort to avoid abandonment of any of his issues by stating, in his brief-in-chief, that the brief incorporates all arguments and authority included in the docketing statement. This is not an acceptable briefing practice, and we hold that it does not operate to preserve any of the issues not specifically argued in the briefs. *See State v. Sandoval,* 88 N.M. 267, 539 P.2d 1029 (Ct. App.1975) (points of error identified in the statement of proceedings but neither briefed nor supported by authority considered abandoned).

The appellate rule concerning briefing does not provide for incorporation of arguments contained in other pleadings. SCRA 1986, 12–213. Allowing such a practice would force opposing counsel and this court to reexamine the docketing statement and other pleadings such as memoranda in opposition to ensure that all of the issues discussed in those documents have been addressed. In addition, it would force this court and opposing counsel to speculate as to which issues a party genuinely wishes to preserve and which the party feels have no merit. Finally, this tactic could be used as a means of avoiding the page limitations placed on briefs by the appellate rules. In sum, to facilitate the opposing party's responses and this court's decision-making process, when a case is decided on a non-summary calendar, it should be decided on the basis of the issues, argument, and authority contained in one manageable set of briefs, as provided for by the rules.

For all of these reasons, defendant's attempt to incorporate arguments and authorities contained in his docketing statement but not in his briefs was ineffective. All issues raised in the docketing statement but not argued in the briefs have been abandoned. *State v. Fish.*

## ADMISSION OF TAPED CONVERSATION

Defendant was arrested on September 21. After his arrest, he made several telephone calls to a friend who had been in the

Roswell Correctional Institute with him at some time prior to the burglaries in question. The friend became concerned about getting involved in the matter, and on September 22 he talked to his probation officer about his concerns. Subsequently that same day, the friend informed the police of his conversations with defendant and said that two briefcases containing a number of items stolen in the burglaries could be found in a clump of bushes just south of a radio station. The friend also permitted a police officer to come to his house that evening and tape a conversation between defendant and the friend. Defendant moved to disallow that conversation on sixth amendment right to counsel grounds. The trial court denied the motion.

■ Once the right to counsel has attached and has been asserted, the state must honor that assertion. *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). The state may not circumvent the assertion by using cooperative co-defendants or other informants to elicit incriminating statements from a defendant who has previously asserted his right to counsel. *Id.; United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). It does not matter whether the defendant initiated the conversation with the informant or volunteered statements, if the informant took some action beyond merely listening and the state knew or should have known incriminating information was likely to result from the conversation. *Maine v. Moulton; United States v. Henry; cf. Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (where trial court found informant did no more than listen, appellate court erred in concluding that the police deliberately elicited the incriminating statements; there is no violation of sixth amendment right to counsel in use of defendant's voluntary statements to an informant).

■ The state contends that defendant's right to counsel was not violated in this case because defendant initiated the conversation and there was no showing the informant, defendant's friend, took any action designed deliberately to elicit incriminating remarks from defendant. As we have already pointed out, however, it does not matter that defendant initiated the taped telephone call. The record reveals that the state knew incriminating statements were likely to result from the conversation, and the informant did more than just listen.

According to the testimony of the officers and of the informant, and as the trial court found, the briefcases containing stolen property had already been located before the conversation was taped. Yet during the conversation the informant pretended they had not yet been found and asked defendant for instructions regarding the location of the items. The informant engaged defendant in a conversation regarding the stolen property and pretended throughout the conversation that he was planning to help defendant by removing the property from the bushes and from a storage locker.[1] The informant asked defendant why he had done "this," and asked whether defendant's girlfriend knew he had done it. On these facts, it is apparent that the informant actively engaged defendant in conversation in a manner which was likely to elicit incriminating statements, and that the state knew or should have known that incriminating statements were likely to result from the conversation.

Nevertheless, we cannot conclude that the state's conduct violated defendant's sixth amendment right to counsel. That right ordinarily attaches when judicial proceedings have been initiated, by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See State v. Sandoval*, 101 N.M. 399, 683 P.2d 516 (Ct.App.1984). With respect to the argument made on appeal in this case, as well, we conclude the right attaches when

1. The record indicates that on defendant's motion the trial court suppressed evidence seized from the storage locker.

judicial proceedings have been initiated. *See Maine v. Moulton,* 474 U.S. at 180, 106 S.Ct. at 489, 88 L.Ed.2d at 499, fn. 16. Thus, it is necessary to determine whether at the time of the taped conversation judicial proceedings against defendant had been initiated with respect to any of the burglary charges. *See People v. Hovey,* 44 Cal.3d 543, 244 Cal.Rptr. 121, 749 P.2d 776, *cert. denied,* 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988).

At the time of the taped conversation, defendant had not been charged with any of the burglaries. He was charged by criminal complaint on October 1; subsequently, on October 29, he was charged by criminal information.

On September 22, when the conversation was taped, defendant was in custody because he had been arrested for violating a condition of parole and held for investigation after his wallet was found at the scene of the burglary charged in count 1 of the criminal information. There is no evidence in the record that he had been formally charged with a parole violation on September 22. Under these circumstances, we conclude that defendant's sixth amendment right to counsel had not attached with respect to any of the burglary counts. *Cf. Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion) (a police station showup at which victim identified the defendant, who had been arrested on suspicion of robbing the victim, did not violate the defendant's sixth amendment right to counsel, because the showup took place before defendant had been indicted or otherwise formally charged). The fact that defendant was a prime suspect in the burglaries, was in custody, and thus was under the control of the authorities does not alter the result under the sixth amendment. *Cf. People v. Hovey* (defendant was incarcerated on unrelated charges and was represented by counsel on those charges; he was also a prime suspect in a murder; his statements to a cellmate regarding the murder were admissible at trial because he had not been formally charged with that crime).

We note that defendant has made no claim on appeal that admission of the taped conversation violated his fifth amendment privilege against self-incrimination. Consequently, his reliance on *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), is misplaced. In more recent cases, the United States Supreme Court has construed *Escobedo* not as a vindication of the sixth amendment right to counsel but as an affirmation of the fifth amendment privilege against self-incrimination. *State v. Sandoval.*

## SUFFICIENCY OF THE EVIDENCE

■ We begin the analysis with a discussion of the evidence relating to count 1, even though defendant did not challenge the sufficiency of the evidence with respect to that count. We do so for purposes of comparison and because the similarity of modes of entry between this burglary and some of the others was one point upon which the trial court relied. The evidence concerning this count was as follows: (1) the burglar entered through an air conditioning duct on the roof of an office; (2) defendant's wallet was found on the roof next to the duct; (3) a briefcase stolen in the burglary was found in defendant's apartment; and (4) the office was located a few blocks from defendant's home. This evidence was clearly sufficient to support defendant's conviction under count 1.

■ *Counts 2, 3, 4, 7, and 8:* In counts 2 and 3, the perpetrator entered a business through the ceiling; burglarized that business, and then burglarized another business located in the same building; and stole property that was later found in the briefcases near the radio station and in defendant's apartment. The office building is located a few blocks from defendant's apartment. Entry in the count 4 burglary was through the roof of an office, through a skylight. Property stolen in the burglary was discovered in defendant's apartment. The premises were a few blocks from defendant's apartment. Entry in the count 7 burglary was also through the roof of a business, through a vent in the ceiling. The premises burglarized in the count 8 burglary were entered from the

business burglarized in the count 7 burglary. Therefore, the initial entry in the count 8 burglary was also through the roof. Property taken in the count 7 burglary was recovered from the briefcases stashed in the bushes. In the count 8 burglary, only cash was taken; however, it can be reasonably inferred that the same person who committed the count 7 burglary committed the count 8 burglary. The premises were located a few blocks from defendant's apartment. The evidence connecting defendant with these burglaries, then, is that the mode of the initial entry into the premises was similar to that used in the count 1 burglary; that defendant had possession of property taken in these burglaries; that the burglaries occurred a short distance from his apartment; and that all the burglaries occurred within a time span of a few weeks.

In addition, in the taped telephone conversation with the informant defendant made several statements implying that he had committed the burglaries. He discussed amounts of cash that he had stored in the briefcases found behind the radio station, and stated that the cash and the items stored in the storage locker were the only things that could "hurt" him; he told the informant that the money in the shaving kit stored inside one of the briefcases came from "a different job altogether," and said there was nothing to tie him to that job; and, finally, he told the informant that his girlfriend "knows I'm guilty." The contents of this conversation, together with the evidence discussed in the preceding paragraph, constitute sufficient evidence to convict defendant of the burglaries charged in these counts.

■ Possession of stolen property, standing alone, is not enough to justify a conviction of burglary or larceny. *See State v. Graves,* 73 N.M. 79, 385 P.2d 635 (1963); *State v. Heim,* 83 N.M. 260, 490 P.2d 1233 (Ct.App.1971). Where other circumstances are present linking defendant with the theft, however, possession of the stolen property combined with the other circumstances can justify such a conviction. *State v. Sanchez,* 98 N.M. 428, 649 P.2d

496 (Ct.App.1982). Among the circumstances that can provide the necessary link to a defendant are a similarity in the nature of the crimes, including the type of victim and the method of carrying them out, and a locational or temporal connection between the crimes. *Cf. State v. Tafoya,* 105 N.M. 117, 729 P.2d 1371 (Ct.App.1986), *vacated on other grounds, Tafoya v. New Mexico,* 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988), *reaffirmed, State v. Tafoya,* 108 N.M. 1, 765 P.2d 1183 (Ct.App. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 1572, 103 L.Ed.2d 938 (1989).

At trial, defendant argued that the evidence presented established at most that he was guilty of receiving stolen property, but was insufficient to show that he committed the burglaries. We disagree. Although no item of evidence recited above, standing alone, might have been sufficient to establish that defendant committed the burglaries, the combination of factors constituted sufficient circumstances linking defendant to the burglaries to justify his convictions. The taped conversation strongly implies that defendant committed a number of burglaries; the burglaries were committed within a short time span, in a geographically limited area; defendant was in possession of property taken in each burglary; and the method of entry in these burglaries was similar to the method of entry in the count 1 burglary. As we have stated, this provided sufficient evidence for the trial court's determination that defendant was guilty of these burglaries.

■ *Counts 5, 6, 9, 10, and 11:* In count 5, entry was through a broken window. In count 6, entry was through a door. In counts 9, 10, and 11, the initial entry was through a broken window, and the subsequent entries were through a connecting door and a sliding door facing a courtyard also faced by the two other offices. Property taken in the burglaries charged in counts 5 and 6 was recovered from defendant's apartment; property taken in the burglaries charged in counts 9 and 10 was recovered from the briefcases stashed in the bushes. No evidence was introduced regarding property taken in the

count 11 burglary, but it can be inferred that the same person who burglarized the businesses in counts 9 and 10 committed the count 11 burglary. All of the premises burglarized were located a few blocks from defendant's apartment, and all of the burglaries charged in these counts were committed in the same two-month period as the burglaries committed in counts 1 through 4 and 7 through 8. The evidence connecting defendant to these burglaries, then, is almost identical to the evidence offered in support of the burglaries discussed in the previous section. The only circumstance missing is a similar mode of entry into the premises—no ceiling entry was involved in these burglaries. Despite the lack of similarity in mode of entry, however, we believe the contents of the taped conversation, the locational and temporal congruity of these burglaries with the others, and defendant's possession of property taken in the burglaries, considered as a whole, provided a sufficient basis for the court's verdicts regarding these counts as well.

*Felon in Possession of a Firearm:* Defendant argues that the briefcase containing the pistol should have been suppressed, leading to the conclusion that there was no admissible evidence proving this count. This argument is premised on the view that the taped conversation should have been suppressed. We have concluded that defendant's sixth amendment right to counsel had not attached at the time the statements were recorded, and therefore the conversation need not have been suppressed.

Further, the briefcases were discovered prior to the taped conversation, as a result of information volunteered to the informant by defendant in a conversation in which the state had no part. Thus, no violation of defendant's right to counsel occurred when the briefcases were discovered. *See Kuhlmann v. Wilson* (sixth amendment is not violated whenever, by luck or happenstance, the state obtains incriminating information from a defendant through an informant; state must have taken some action designed to elicit the information). Since this claim was the basis of defendant's motion to suppress the

briefcases, no grounds exist for such a suppression.

Therefore, the evidence on this point shows that the firearm was stolen in a burglary, and that it was recovered along with other articles of property defendant had stashed in some bushes. This was sufficient to establish that defendant possessed, transported or received the firearm in accordance with NMSA 1978, Section 30–7–16(A) (Cum.Supp.1989).

## AMENDMENT OF SENTENCE

The trial court entered an amended judgment and sentence on May 27, 1988. On June 16, defendant filed his notice of appeal. On August 24, the court entered a second amended judgment and sentence, adding a requirement of restitution and ordering that the amounts of money left in defendant's bank accounts be the first installment in the restitution. Defendant maintains that the court lost jurisdiction to amend its May 27 judgment after 30 days had passed. We disagree. The restitution requirement was statutorily mandated, since the trial court suspended part of defendant's sentence. *State v. Lack*, 98 N.M. 500, 650 P.2d 22 (Ct.App.1982). Where a sentence lacks a statutorily mandated provision, the trial court does not lose jurisdiction to amend the sentence to include the provision simply by the passage of thirty days since the sentence was imposed. *See March v. State*, 109 N.M. 110, 782 P.2d 82 (1989); *cf. State v. Acuna*, 103 N.M. 279, 705 P.2d 685 (Ct.App.1985) (court had jurisdiction to amend sentence to include mandatory parole period until parole period expired). This point is without merit.

Although defendant did not raise this issue on appeal, we note that the trial court amended the judgment after defendant had filed his notice of appeal. Therefore, the trial court lacked jurisdiction to amend the sentence. *See generally State v. Garcia*, 99 N.M. 466, 659 P.2d 918 (Ct.App.1983) (pendency of defendant's appeal deprived trial court of jurisdiction to enter valid judgment and sentence, even though first sentence it had entered was not valid); SCRA 1986, 12–216(B) (failure to preserve question for review does not

prevent appellate court from reaching jurisdictional issue). The trial court will not regain its jurisdiction to correct the omission of the restitution requirement until mandate has issued from this court. *See id.*

Defendant argues that the trial court erred in refusing to consider his motion for new trial because a notice of appeal had already been filed. The court's refusal was correct. *See* SCRA 1986, 5–614(C) (if an appeal is pending, the trial court may not act on a motion for new trial based on new evidence until the case is remanded from the appellate court).

CONCLUSION AND DISPOSITION

Pursuant to the foregoing, we affirm defendant's convictions on all counts. We reverse the amendment of the judgment and sentence, and we remand to the trial court with instructions to add the mandatory restitution requirement in accordance with the substantive and procedural provisions outlined in NMSA 1978, Section 31–17–1 (Repl.Pamp.1987).

IT IS SO ORDERED.

ALARID and HARTZ, JJ., concur.