669 P.2d 736

STATE of New Mexico,
Plaintiff-Appellee,

v.

Denson D. HENDERSON,
Defendant-Appellant.

No. 7059.

Court of Appeals of New Mexico.

Aug. 10, 1983.

Certiorari Denied Sept. 15, 1983.

Paul Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Martha A. Daly, Rothstein, Bailey, Bennett & Daly, Santa Fe, for defendant-appellant.

## OPINION

NEAL, Judge.

■ The defendant, Denson Dale Henderson, was convicted of kidnaping, contrary to NMSA 1978, § 30–4–1 A(3), and criminal sexual penetration of a child under thirteen years of age, contrary to NMSA 1978, § 30–9–11 A(1). Henderson's appeal concerns photographs taken by an automated bank teller machine which were admitted into evidence, and alleged prosecutorial misconduct. Another issue listed in the docketing statement but not briefed is abandoned. *State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

The victim was six years old. She was playing with her brother and a friend outside a shopping center where her mother had a store. At 4:45 p.m. the mother checked on the children. Everything was fine.

Shortly after that a man drove up in an old blue Plymouth, grabbed the victim, and sped away. She was taken to a remote well site where the man forced her to undress and then sexually penetrated her. He punched her in the face and drove away.

A baseball hat with a Case emblem was found at the abduction site. The mother had not seen it when she checked on the children at 4:45. Three hairs found in the foam brim of the hat matched the defendant's hair. Sweat on the hat matched the defendant's secretion factors. There were blood stains on the seat of the defendant's car, a blue Plymouth. The blood stains matched the victim's blood, and were inconsistent with the defendant's. Seminal stains on the victim's blouse matched the defendant's secretion factors. Four hats with a Case emblem were seized from the defendant's house.

The victim identified the defendant as the perpetrator in court, from a photo array, and at a line-up conducted under defense counsel's supervision. The defendant's next-door neighbor said that he saw the defendant driving shortly before 5:00 p.m. on the day in question, and the defendant had a little girl in his car. The neighbor thought this was unusual because he had never seen the defendant or his wife with any children. The neighbor waved but the defendant did not respond.

The defendant said he was at his brother's until 4:30 p.m. Then he drove home. He had car trouble and did not get home until 5:30. He denied being near the shopping center. Besides his alibi the defendant tried to establish a reasonable doubt, pointing out inconsistencies in the victim's testimony. For example, the victim did not remember big tatoos which the defendant had on his arms. She first said the incident took place outside the car, but at trial she said it took place in the car. She first said the defendant's tee shirt was blue, but at trial she said it was light blue with a darker blue border.

### 1. *"Silent witness"*

On the day of the incident the defendant had withdrawn five dollars from an "Amigo" machine, an automated bank teller. The "Amigo" machine makes written records of all transactions, and also takes a picture of the person making the transaction. Two photographs of the defendant, taken earlier in the day, were introduced by the State. The photographs show the defendant wearing a hat with a Case emblem and what appears to be a light tee shirt with a darker border. The defendant contends that these photographs were hearsay and not properly authenticated.

■ The admissibility of photographic evidence is based on two different theories. One is the "pictorial testimony" theory, under which the photographic evidence is admissible only when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation. That theory is not applicable here. The photographs were not offered to corroborate or explain the testimony of a witness who saw an event or thing. The other theory is the "silent witness" theory, under which photographic evidence is a "silent witness" which speaks for itself, and is substantive evidence of what it portrays independent of

a sponsoring witness. *See,* 2 C. Scott, Photographic Evidence § 1021 (2d ed. Supp. 1980); 3 J. Wigmore, Evidence § 790 (Chadbourn rev. 1970); *Fisher v. State,* 7 Ark.App. 1, 643 S.W.2d 571 (1982). Here the "silent witness" theory is applicable because there was no sponsoring witness at the automated teller. The automated teller is a "silent witness" which tells us that on a certain date, at a certain time, the defendant was dressed a certain way. We follow the overwhelming majority of jurisdictions and adopt the "silent witness" theory. *See* cases collected in *Fisher, supra.*

Before discussing the foundation necessary for admission of photographic evidence under the "silent witness" theory we address the defendant's claim that the photographs are inadmissible hearsay. In *United States v. Oaxaca,* 569 F.2d 518 (9th Cir. 1978), several bank surveillance photographs which showed a bank robbery in progress were introduced. One of the robbers was wearing a checkered shirt. Later, a checkered shirt was found in the getaway car. The bank surveillance photographs were introduced to show that the checkered shirt found in the getaway car was the same shirt used in the bank robbery and thereby circumstantially link the defendant with the crime. The Ninth Circuit rejected the defendant's claim that the photographs were inadmissible hearsay.

Our case is very similar. The "Amigo" photographs were introduced to show that the hat with the Case emblem, found at the abduction site, belonged to the defendant. Under *Oaxaca, supra,* the photographs are not inadmissible hearsay.

■ When photographic evidence is sought to be admitted under the "silent witness" theory what foundation is required? The evidence must be authenticated. A witness with knowledge must testify that the thing is what it purports to be. NMSA 1978, Evid.R. 901; *State v. Gallegos,* 91 N.M. 107, 570 P.2d 938 (Ct.App.1977). The evidence must be relevant and its probative value must outweigh any unfair prejudice which may result. NMSA 1978, Evid.R. 403. The trial court has discretion

to admit or exclude the evidence, and our review will be limited to determining whether there has been an abuse of discretion. *State v. Webb,* 81 N.M. 508, 469 P.2d 153 (Ct.App.1970).

■ The defendant contends that the photographs were not properly authenticated. They were. Pamela Vargas, an officer in charge of the "Amigo" machine, testified about the film developing procedure and that she had requested that the film for August 9, 1982 at 10:22 a.m. be developed. This was an adequate foundation. The defendant has shown nothing to indicate that the photographs were not what they purported to be. The photographs were authenticated, relevant, and properly admitted.

2. *Prosecutorial misconduct*

The defendant contends that theatrics by the prosecutor in closing argument warrant a new trial. The prosecutor crumpled a paper bag and threw it down, commenting that the victim had been "raped and discarded like that bag."

■ We have said many times that this kind of conduct has no place in a trial. The evidence in this case, however, was overwhelming. The prosecutorial misconduct did not contribute to the conviction. *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978).

The defendant's convictions are affirmed.

IT IS SO ORDERED.

WALTERS, C.J., and HENDLEY, J., concur.