This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36446**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**CORY NEAL,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** The State appeals from an order of the district court granting Defendant's motion in limine to exclude a surveillance video. Defendant Cory Alan Neal was charged with receiving or transferring a stolen vehicle under NMSA 1978, Section 30-16D-4 (2009), and possession of burglary tools under NMSA 1978, Section 30-16-5 (1963). Both Defendant and the State filed motions in limine seeking an order to, respectively, exclude or admit video evidence recorded by a surveillance camera at a Walgreens store. The district court excluded the surveillance video because it was not persuaded

that the video could be properly authenticated. The State contends on appeal that it could have offered sufficient authentication testimony from law enforcement officer witnesses who were in portions of the surveillance video and that the district court abused its discretion by denying the State's request to present testimony and evidence at a pretrial evidentiary hearing on authentication. Unpersuaded, we affirm.

**BACKGROUND**

**{2}** At a hearing on Defendant's motion in limine, the State proffered that its police officer witnesses would identify themselves and Defendant in portions of the video; identify through personal knowledge the general scene depicted in the video; establish the request and retrieval of the surveillance video; and establish the chain of custody of the video forward from the point the law enforcement officers retrieved the video. In other words, the officer who procured the evidence could have testified about (1) the procedure by which he obtained it from the Walgreens in which the recording was generated, and (2) the manner in which he would have confirmed the nature of its content, based on his familiarity with the location and his own appearance in the video at the date and time in question.

**{3}** Defendant challenged the accuracy of the video, arguing that it was necessary to have a witness testify about the video retrieval process generally, whether a Walgreens employee can manipulate a surveillance video, whether an employee *did* manipulate the video, and how the overall procedure employed by Walgreens to effectuate its video surveillance generally functions. To these points, the State does not appear to have offered a witness who was present to observe the important portion of the videotape that showed the person in the driver's seat of the car reported stolen, nor evidence regarding the automated video recording device or recording procedure. The parties do not significantly disagree about these facts.

**{4}** The district court granted Defendant's motion in limine, suppressing the surveillance video. The district court based its order on findings that the State:

> 1. . . . "did not have the necessary witness(es) to authenticate and admit the surveillance video because the State did not have a custodian of records/foundational witness from Walgreens";
>
> 2. . . . "did not have a witness who could authenticate the veracity and accuracy of the recording of the video"; and
>
> 3. . . . "did not have a witness with knowledge to testify that the video was a fair and accurate representation of the subject matter depicted."

The State appeals.

**DISCUSSION**

**{5}** We review evidentiary rulings for abuse of discretion. *See State v. Patterson*, 2017-NMCA-045, ¶ 6, 395 P.3d 543 (stating that we review evidentiary rulings of the district court for an abuse of discretion). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted). In this case, we are also mindful that there is a low bar for the inclusion of surveillance video evidence. *See State v. Imperial*, 2017-NMCA-040, ¶ 29, 392 P.3d 658 (stating that this Court has "articulated a low bar for authentication of photographic evidence created through automatic processes"). "The purpose of authentication is to show that the evidence is what it purports to be." *State v. Apodaca*, 1994-NMSC-121, ¶ 28, 118 N.M. 762, 887 P.2d 756; *accord* Rule 11-901(A) NMRA.

**{6}** Photographic and videographic evidence can be admitted under two theories: (1) the "silent witness" theory, and (2) the "pictorial testimony theory." *State v. Henderson*, 1983-NMCA-094, ¶ 8, 100 N.M. 260, 669 P.2d 736. Under the "silent witness" theory, video or still photograph evidence is authenticated by a witness who testifies from knowledge that "the thing is what it purports to be." *Id.* ¶ 11. "The theoretical underpinning of the 'silent witness' theory is that the photograph speaks for itself and is substantive evidence of what it portrays." *State v. Sweat*, 2017-NMCA-069, ¶ 21, 404 P.3d 20 (alterations, internal quotation marks, and citation omitted). Surveillance photographs and video evidence are regularly authenticated under this theory because surveillance imaging technology often records events witnessed only by the persons depicted. *See Henderson*, 1983-NMCA-094, ¶¶ 11, 12 (stating that under the "silent witness" theory, video or still photograph evidence is authenticated by a witness who testifies from knowledge that "the thing is what it purports to be" and holding that sufficient evidence of authentication was presented where a person "in charge" of the machine that generated the security images testified "about the film developing procedure" and that she requested film be developed from a specific date and time); *see also Imperial*, 2017-NMCA-040, ¶¶ 31-32 (stating that video evidence was properly authenticated under the "silent witness" theory where an "asset protection associate" testified that the surveillance video depicted the location where she worked, the date and time information on the video was programmed remotely and could not be manipulated, and video from specific dates and times could be downloaded within ninety days).

**{7}** Under the "pictorial testimony" theory, photographic evidence requires a witness to "testify that [the evidence] is a fair and accurate representation of the subject matter, based on that witness's personal observation." *Henderson*, 1983-NMCA-094, ¶ 8. This requirement generally necessitates a witness to the recording or a participant in the events recorded. For example, in *State v. Thurman*, a video recording was sufficiently authenticated where an officer who was present at the making of the video testified that the recording was "true and accurate as to what it purported to represent." 1972-NMSC-040, ¶¶ 4, 8, 84 N.M. 5, 498 P.2d 697.

**{8}**    As we understand the district court's order granting Defendant's motion in limine, the court concluded that the State's proffered evidence was insufficient to establish by a preponderance of the evidence that the footage was what it purported to be: i.e., visual recordings of Defendant driving the vehicle. *See* Rule 11-901(A) NMRA (governing authentication); *see, e.g., Henderson*, 1983-NMCA-094, ¶¶ 7, 12 (holding that photographic evidence generated by an ATM was properly authenticated where a person testified that she had requested the film be developed for a specific time and date). *See generally State v. Martinez*, 2007-NMSC-025, ¶ 21, 141 N.M. 713, 160 P.3d 894 ("[I]n considering whether a foundational requirement has been met . . . the trial court must satisfy itself by a preponderance of the evidence . . . when making its decision the trial court is not bound by the rules of evidence . . . [and accordingly,] the trial court may consider hearsay.").

**{9}**    The State continues to assert that the officer's lack of first-hand knowledge regarding the portion of the video that shows Defendant driving the vehicle should not be regarded as a fatal deficiency. However, we have previously observed that, under the applicable "pictorial witness" theory, such personal knowledge may be required. *See Henderson*, 1983-NMCA-094, ¶ 8 (distinguishing between the pictorial-testimony theory, which entails the presentation of testimony from a sponsoring witness, stating that the image is a fair and accurate representation of the subject matter based on that witness's personal observation, and the silent-witness theory, by which an image speaks for itself and is substantive evidence of what it portrays independent of a sponsoring witness). Under *Henderson* and our precedent governing authentication of evidence such as the surveillance video at issue on appeal, we conclude that the district court did not abuse its discretion.

**{10}**    The State also relies on a number of federal and out-of-state authorities for the proposition that the district court could have relied on a third, "distinctive characteristics" theory of authentication. Defendant answers, and we agree, that the State failed to preserve this issue for appeal. By failing to raise or otherwise mention "distinctive characteristics" as a basis upon which to authenticate the video evidence, and focusing instead on the "silent witness" theory of admissibility, the State deprived the district court an opportunity to correct the asserted error, and in such a circumstance we will not do so on appeal. *See State v. Tijerino*, 2004-NMCA-039, ¶ 21, 135 N.M. 313, 87 P.3d 1095 (affirming dismissal of indictments where the state failed to preserve argument that conduct forming the basis of the City of Albuquerque's civil forfeiture action and the indictments was not unitary).

**{11}**    To the extent that the State challenges the district court's consideration of proffers and denial of the State's request to present testimony and evidence at a pretrial evidentiary hearing on authentication, we do not reach that question. The State asks us to consider that issue only if we "were to disagree that the State's proffers constitute the factual basis accepted for this review[.]" Because we do not disagree in this case, where we note that there are no significant disagreements regarding the proffered testimony, we need not consider whether the district court should have conducted a full hearing.

**CONCLUSION**

**{12}**  For the foregoing reasons, we affirm.

**{13}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**